# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

RUFUS JONES, *pro se*,

                              Plaintiff,

-vs-

                                                   DECISION & ORDER
SEIU LOCAL 1199 AND UNIVERSITY OF            08-CV-6179-CJS
ROCHESTER,[1]

                              Defendants.

---

## APPEARANCES

| | |
|---|---|
| Plaintiff: | Rufus Jones, *Pro Se* <br> 493 West Avenue <br> Rochester, NY 14611 <br> (585) 328-9183 |
| Defendant SEIU Local 1199: | Michael T. Harren, Esq. <br> Chamberlain, D'Amanda, Oppenheimer & Greenfield <br> 1600 Crossroads Building <br> Two State Street <br> Rochester, NY 14614 <br> (585) 232-3730 |
| Defendant University of Rochester: | Linda T. Prestegaard, Esq. <br> Kevin Joseph Mulvehill, Esq. <br> Phillips Lytle LLP <br> 28 East Main Street <br> 1400 First Federal Plaza <br> Rochester, NY 14614 <br> (585) 238-2029 |

---

[1] In the caption of his complaint, Plaintiff lists the University of Rochester as, "Re University of Rochester." In the body of the complaint and in the section in which he listed the parties, he identified the university by its real name, "University of Rochester."

# INTRODUCTION

**Siragusa, J.** This case, in which Plaintiff alleges that defendants engaged in unfair labor practices, is before the Court by Plaintiff's motion (Docket No. 57) and Defendants' cross-motions (Docket Nos. 58 & 64), all seeking summary judgment. For the reasons stated below, Defendants' cross-motions are granted and Plaintiff's motion is denied.

# FACTUAL BACKGROUND

Western District of New York Local Rule of Civil Procedure 56.1 provides in pertinent part as follows:

> RULE 56.1 STATEMENTS OF FACTS ON MOTION FOR SUMMARY JUDGMENT
>
> (a) Upon any motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.
>
> (b) The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
>
> (c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.
>
> (d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e). All such citations shall identify with specificity the relevant page, and paragraph or line number of the authority cited. All cited authority, such as affidavits, relevant deposition testimony, responses to discovery requests, or other documents containing such evidence, shall be separately filed and served as an appendix to the statement prescribed by subsections (a) or (b), supra, in conformity with Federal Rule of Civil Procedure 56(e), and denominated "Plaintiff's-/Defendant's Appendix to Local Rule 56.1 Statement of Material Facts." Any cited authority that has otherwise been served and filed in conjunction with the motion need not be included in the aforementioned appendix.

Consistent with *Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001), both 1199 SEIU ("the Union") and the University of Rochester ("the University") with respect to their cross-motions for summary judgment, each complied with Local Rule 56.2, which requires that a pro se party be alerted as follows:

> Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.
>
> In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may include plaintiff's own statements, must be in the form of affidavits. Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment.
>
> Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.
>
> Pursuant to Rules 7.1(e) and 56.1 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to file and serve the following papers in opposition to this motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried, followed by citation to admissible evidence. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.

If plaintiff has any questions, he/she may direct them to the Pro Se Office.

Plaintiff must file and serve any supplemental affidavits or materials in opposition to defendant's motion no later than the date they are due as provided in Rule 56.1(e) of the Local Rules of Civil Procedure for the Western District of New York.

Plaintiff's motion for summary judgment, consisting of thirty-seven pages in total, starts with a combination of a legal memorandum and an affirmation, which Plaintiff signed under penalties of perjury. Following that, he attached numerous documents, including correspondence, pay charts, answers to interrogatories and copies of statutes.

In his complaint, Plaintiff alleges that both Defendants engaged in unfair labor practices by failing to comply with the collective bargaining agreement ("CBA") between the Union (of which he was a member) and the University. He contends that since the University did not employ progressive discipline for his alleged misconduct, and the Union failed to fairly represent him in his grievance against the University, both have breached the CBA. He seeks reinstatement with back pay.

The parties agree on the following facts. Plaintiff was hired by the University at Strong Memorial Hospital ("the hospital") on April 18, 2005, and, at the same time, became a member of the Union. The Union organized employees of the hospital, and both the Union and the University are parties to the applicable CBA, covering the period from October 2, 2005, through September 29, 2007. Plaintiff was initially assigned to the position of building service worker effective on May 2, 2005. Subsequently, on April 15, 2007, he was assigned to the position of patient care technician ("PCT"). The CBA provided for a wage increase for an employee with two years seniority. However, Plaintiff's

wages were not increased since, according to Defendants, he changed his classification prior to his second year anniversary.

The University contends that on three separate occasions in September, 2007, Plaintiff, while working as a PCT, engaged in misconduct involving patients. On September 20, 2007, the University held a disciplinary hearing at which Plaintiff was represented by the Union. On September 28, 2007, following the hearing, Plaintiff was discharged as a result of a misconduct determination. The Union filed a grievance concerning Plaintiff's discharge, and a step three grievance meeting was held on October 22, 2007, where Plaintiff was again represented by the Union. After that meeting, the University denied the grievance. Then, on November 9, 2007, the Union determined that it would not pursue the grievance through arbitration, and so informed Plaintiff.

The University Policy 154 ("Policy 154"), Corrective Discipline, was in effect at the time of Plaintiff's employment and provides as follows:

> When an employee's conduct interferes with the orderly and efficient operation of the University, or an employee's performance does not meet the expectations or requirements of the job, the University may take corrective action. In some cases, it may be appropriate to consider progressive discipline, which provides the opportunity for employees to be warned of the seriousness of unacceptable behavior and the consequences if the misconduct continues. However, the decision to use or not to use progressive discipline is solely within the discretion of the University. Nothing in this Policy is intended to modify the at-will nature of employment, which means that either the employee or the University may terminate the employment relationship at any time.

(University Ex. C, at 1.) Policy 154 also lists examples of misconduct considered "so severe that except in unusual circumstances, discharge is warranted." (*Id*. at 3.) On the list is, "[a]busive, threatening or harassing remarks or behavior toward a supervisor, security officer, patient, visitor, student or another employee." (*Id*. at 4.)

**STANDARDS OF LAW**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the Court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the Court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

In its Notice of Cross-Motion (Docket No. 58), Defendant 1199 SEIU United Healthcare Workers East included the following language:

> **Notice to Pro Se Litigant Opposing Motion For Summary Judgment**
>
> Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN

> HIS COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.
>
> In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may include plaintiff's own statements, must be in the form of affidavits. Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment. Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant.
>
> If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.
>
> Pursuant to Rules 7.1(e) and 56.1 of the Local Rules, plaintiff is required to file and serve the following papers in opposition to this motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried, followed by citation to admissible evidence. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.
>
> If plaintiff has any questions, he/she may direct them to the Pro Se Office.
>
> Pursuant to Rule 56.1(e) of the Local Rules, unless otherwise ordered by the Court, plaintiff shall have thirty (30) days after service of this cross-motion in which to file responding papers.

(Docket No. 58 at 1–2.) Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally "to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Additionally, because he requested time to provide additional written argument and evidence, the Court postponed rendering

-8-

its decision until after Plaintiff filed what he titled, "Notice of Memorandum in Support of Oral Argument with Exhibits" (Docket No. 72, filed Oct. 15, 2009).

## ANALYSIS

Plaintiff's *pro se* complaint alleges that Defendants committed unfair labor practices. He alleges for a first cause of action that on December 5, 2007,

> Tracy Harrison, Administrative organizer Bruce Popper, Vice President, Fail to [sic] Contracts of the Collective Bargaining agreet [sic] between the Union and the Hospital on behalf of Rufus Jones. Contracts Violated, page 101 Memorandum of understanding progressive and corrective Discipline page 24 Wages, page 55, Article XXIII 27 Discipline page 58 Article XXIX 20 Grievance procedure.

(Compl. at 4.) Plaintiff cites to 29 U.S.C. §§ 151 and 153,[2] and asks the Court "[i]nstruct the union and the Hospital to following [sic] the contracts as written." In his second cause of action, Plaintiff alleges that on September 28, 2007,

> Fay Norton Discharged Rufus Jones from Employment at the University of Rochester. Fay Norton and the University of Rochester are in violation of the same legal statutes as stated for the Above defendant. Except for the Grievance procedure.

(Compl. at 4.) He seeks the same relief as he requests with respect to his first cause of action, and in the form complaint section entitled "Summary of Relief Sought," asks the Court to fully reinstate his employment with back pay and to "enforce the National Labor Relations Act which the Defendants failed to do."

The University and the Union interpret Plaintiff's complaints as being brought under the Labor Management Relations Act[3] section 301 as a "hybrid 301/duty of fair

---

[2] The first section expresses Congress's findings when passing the National Labor Relations Act, and the second section creates the National Labor Relations Board.

[3] The Labor Management Relations Act, June 23, 1947, ch 120, § 1, 61 Stat. 136, is also known as the Taft-Hartley Act. Section 301 of the Act is codified in 29 U.S.C. § 185. *DelCostello*

representation claim" against both defendants. The Court agrees. In that regard, as explained by the Southern District Court of New York in *Vargus v. SEIU Local Union No. 325-32J, & 2727 Realty, LLC*, No. 05 Civ. 9992 (PKC), 2006 U.S. Dist. LEXIS 77034 (S.D.N.Y. Oct. 23, 2006):

> a plaintiff may bring suit under section 301 of the Labor Relation's [sic] Management Act where the plaintiff can demonstrate that there has been a breach of the duty of fair representation on the part of the union. [*Katir v. Columbia Univ.*, 15 F.3d 23, at 24-25 (2d Cir. 1994)]. Underlying this exception is the notion that a claim brought under section 301 is effectively two claims, one against the employer for violation of section 301 and one against the union for breach of the duty of fair representation. As such, to establish a hybrid section 301/duty of fair representation claim, a plaintiff must make the dual showing that (1) the employer breached a collective bargaining agreement; and (2) the union breached its duty of fair representation to the union member. *See DelCostello v. Int'l Bd. of Teamsters*, 462 U.S. 151, 164-65, 76 L. Ed. 2d 476 (1983). Because the two claims against the employer and union are "inextricably interdependent," a plaintiff's ability to sue their employer is contingent on the threshold showing that the union breached its duty of fair representation. *See United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 62 (1981) (stating that an "indispensable predicate" of a section 301 action is a "demonstration that the Union breached its duty of fair representation.")
>
> To state a claim for relief on a hybrid section 301/duty of fair representation claim, the non-moving party is required to articulate specific facts demonstrating bad faith, discrimination or arbitrariness on the part of the union. *See White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (citing *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). "Conclusory allegations without specifying supporting facts to show a union's lack of good faith fail to state a valid claim." *Spielmann v. Anchor Freight. Inc.*, 551 F. Supp. 817, 822 (S.D.N.Y. 1982).

*Vargas*, 2006 U.S. Dist. LEXIS 77034, 13-15. The Second Circuit addressed a hybrid claim in *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000):

---

*v. International Broth. of Teamsters*, 462 U.S. 151, 162 (1983).

Such suit, which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim.… The employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim; to prevail the employee "must not only show that [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union." *DelCostello* [*v. Int'l Broth. of Teamsters*], 462 U.S. [151] at 165 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981)(Stewart, J., concurring)).

*Carrion*, 227 F.3d at 33.

Section 301 reads as follows:

301. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, my be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the Unites States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

(d) The service of summons, subpena [sic], or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

(e) For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

29 U.S.C. § 185 (1947).

In *DelCostello v. Int'l Bd. of Trustees*, 462 U.S. 151 (1983), the Supreme Court held that the six-month statute of limitations in 29 U.S.C. § 160(b) applied to hybrid section 301 lawsuits. *Id.* at 155 (citing to the National Labor Relations Act section 10(b), codified at 29 U.S.C. § 160(b)). The subject lawsuit was filed by Plaintiff on April 22, 2008. Plaintiff's first cause of action relates to acts he alleges occurred on December 5, 2007, four months and seventeen days prior to his filing date. His second cause of action relates to acts he alleges occurred on September 28, 2007, six months and twenty-five days before he filed suit. More specifically, this second cause of action centers on Plaintiff's contention that his rate of pay was supposed to have been increased once he had been employed for two years. Defendants maintain that this second cause of action falls outside the limitations period set by section 10(b). (*See* Pl.'s Mem. of Law at 2.) The Court agrees, and finds that the dispute concerning Plaintiff's claim concerning his failure to receive an increase in pay falls outside the limitations period[4] and must be dismissed.[5]

The Court now turns its attention to Plaintiff's only viable cause of action: his claim that the Union breached its duty of fair representation by not arbitrating Plaintiff's dismissal for alleged misconduct, and that the University breached the CBA by not applying progressive discipline, or by not allowing Plaintiff to return to his building maintenance position.

---

[4]Measuring back six months from the date the lawsuit was filed, April 22, 2008, anything prior to October 22, 2007, is outside the section 10(b) limitations period.

[5]Plaintiff's Notice of Memorandum in Support of Oral Arguments With Exhibits (Docket No. 72) continues to argue that he was entitled to the pay increase, but does not address the statute of limitations.

> As to the Union's alleged liability,
>
>> "To establish a breach of duty of fair representation [t]he union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermine[d] the arbitral process." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003) (internal quotation marks omitted). "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).

*Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 Fed. Appx. 40, 42 (2d Cir. 2006). Furthermore, If the Union is successful in showing that it did not breach its duty of fair representation, then the Court need not consider whether the University breached the CAB. *Id*. ("Here, as the district court pointed out, we need not determine whether the Hospital breached the collective bargaining agreement (or whether Nicholls is collaterally estopped from litigating this aspect of her claim) because Nicholls has failed to establish that the Union breached its duty of fair representation."). When the Union decided not to arbitrate Plaintiff's grievance, it was incumbent upon the Union to meet its "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The Union's actions "are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). "A union member does not have an absolute right to have a grievance arbitrated. Rather, a union's decision to settle or proceed to arbitration is a discretionary determination to be made by the union and does not breach the duty of fair representation." *Vaughn v. AT&T*, 92 Fed. Appx. 21, 23 (2d Cir. 2004).

Plaintiff requests the Court to direct the Union to take his grievance to arbitration. (Pl.'s Mem. of Law at 3–4 ("Rufus Jones request that the union arbitrate this matter pursuant [t]o the collective bargaining agreements" and "[t]he union denied Rufus Jones the arbitration [p]rocess…."). Plaintiff relies on the decision by the State of New York, Unemployment Insurance Appeal Board,[6] dated February 12, 2008 (Pl.'s Ex. 4), as evidence that the Union was unreasonable in not arbitrating his grievance about being terminated for cause. In the Unemployment Insurance decision, the administrative law judge determined that pursuant to New York Labor Law, the

> credible evidence establishe[d] that [Plaintiff] was discharged on September 21, 2007 because the employer had received complaints about the [Plaintiff's] conduct during three incidents with patients that occurred between September 14, 2007 and September 20, 2007. The [Plaintiff's] credible sworn testimony that he did not engage in any inappropriate behavior toward the three patients that were the subject of complaints received by the employer is accepted over the employer's hearsay testimony to the contrary. Under these circumstances, the claimant's actions do not constitute misconduct *within the meaning of the Unemployment Insurance Law*.

(Pl.'s Ex. 4 at 2 (emphasis added).) New York Labor Law § 623, however, states that, "[n]o finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding…." *See Rivoli v. Stern*, 160 A.D.2d 601, 602 (N.Y. App. Div. 1st Dept. 1990) ("findings by the Unemployment Insurance Appeal Board are not dispositive of the issues raised in this appeal" on a claim of wrongful dismissal.). Thus, the Court is not bound by the administrative law decision. *Obiajulu v. City of Rochester*, 975 F. Supp. 469, 471 (W.D.N.Y. 1997).

---

[6]In his Notice of Memorandum in Support of Oral Argument with Exhibits (Docket No. 72), Plaintiff repeats this contention that, "both defendants are guilty of Failures of proof in this situation…." (Pl.'s Mem. of Law (Docket No. 72) at 4.)

The Court now considers the merits of Plaintiff's contentions as to seniority and the three incidents that prompted the University to discharge him. Although, Plaintff has admitted only that the three incidents occurred, his explanation of what took place differs from the University's account. (*See, e.g.,* Jones Dep. at 18 (describing the EKG incident); 19–20 (describing the incident with a patient who was injured by a dog and a comment Plaintiff made that the patient might be able to get disability); 22–23 (describing the incident with a patient who had soiled himself).) However, the Court need not determine whether the incidents with the patients took place as reported by the University, but only whether the Union's decision not to take the matter to arbitration was reasonable. *See Duttweiller v. Eagle Janitorial, Inc.*, No. 5:05-CV-0886 (CTS/GHL), 2009 WL 1606351, *12 (N.D.N.Y. Jun. 4, 2009) ("As an initial matter, the Court notes that, even assuming that there was not cause to fire Plaintiff, or even assuming that the Employer (due to a failure to indicate a time frame) breached the agreement with Plaintiff not to discipline her until she was given time to produce certain medical documentation evidencing a disability, the relevant issue before the Court is whether the Union breached its duty of fair representation."). The CAB, Article XXVII, provides that the University[7] "shall have the right to discharge, suspend or discipline any Employee for just cause." (Harren Aff. Ex. J at 55–56.) As related above, the University's Policy 154 allows termination of an employee for, *inter alia*, harassing remarks toward a patient. Based on the information the Union had from the grievance hearing, at which a union representative appeared, it was reasonable

---

[7]The CAB is between the Union and, "Strong Memorial Hospital, University of Rochester Medical Center." There is no dispute that the University and Strong Memorial Hospital are the same party.

for the Union to conclude that it would not be successful at arbitration. Further, as the Union indicates in its memorandum of law,

> the issue facing the Union was not whether it could win a vindication of Jones before the arbitrator, but only whether the appropriate penalty would be to return him to his building service worker position. Jones was a relatively short-term employee, having been there only some few months past his second anniversary, and he did not have a strong work record upon which to rely.

(Union Mem. of Law at 9.) The Union's decision not to arbitrate was affirmed by the Rochester Area Hearings and Appeals Board, in a letter dated December 5, 2007, and by the National Labor Relations Board in a letter addressed to Plaintiff dated April 18, 2008. (Harren Aff. Ex. H.) Based on the evidence before the Court on this motion, the Union's decision not to arbitrate Plaintiff's grievance was not so far outside the wide range of reasonableness as to be irrational. Plaintiff's suggestion that neither the University or the Union should have been permitted to rely on hearsay is misplaced. (*See* Pl.'s Mem. of Law (Docket No. 72) at 2 ("The 3 incidents [w]ere based on hearsay evidence and lies fabricated by Pam Parnaby see plaintiff exhibit (4) and exhibit (14).") Plaintiff's Exhibit 4 is the Unemployment Insurance Appeal Board hearing decision (Docket no. 57 at 9), which the Court addressed above. Exhibit 14 does not exist in Plaintiff's "Notice of Request for Motion for Summary Judgment, Exhibits Attached Here To" (Docket No. 57).

At oral argument, the Court invited Plaintiff to submit any additional argument in writing concerning his hybrid 301/duty of fair representation claim. On November 6, 2009, he did so (Docket No. 75). In that paper, which he labeled as, "Notice of Additional Information to Plaintiff[']s Case Exhibits Attached Hereto," he again refers to the decision of the New York State administrative law judge's decision, discussed in detail above. He

then argues that if the Court is going to use the union's evidence, then "plaintiff evidence concerning unemployment decision of no findi[n]gs of Misconduct in plaintiff exhibit 14 should be used as well." (Docket No. 75 at 1.) Plaintiff confuses this Court's role on the present motion. It is not the Court's duty to adjudicate the underlying contention (that Plaintiff, on three occasions, committed misconduct). It is the Court's duty to determine whether evidentiary proof in admissible form shows that the University breached the CAB, or that the union failed in its duty of fair representation. The proof submitted by Plaintiff does not raise a material question of fact and the evidentiary proof submitted by Defendants shows their entitlement to summary judgment on the hybrid 301/duty of fair representation claim. Plaintiff also contends that his "Exhibit 14, and exhibit 4" make it clear "that if plaintiff would have went [sic] to arbitration on the merits Plaintiff would have won." (Docket No. 75 at 2.) Exhibit 4 is a decision of the New York Unemployment Insurance Appeal Board. The Court is unable to find Exhibit 14 in Plaintiff's papers. The Court has already addressed the unemployment decision, above. Plaintiff's further argument on that point is unpersuasive. Citing to Exhibit 5, Plaintiff contends that the Union denied him "the Regional Hearing and Appeals Board process." (Docket No. 75 at 3.) Exhibit 5, a letter from the Chair of the 1199 SEIU Rochester Area Hearings and Appeals Board, states, "On December 5, 2007 the Rochester Area Hearings and Appeals Board *heard* your appeal of the decision by the Union not to arbitrate the denial of your third step grievance." (Pl.'s Ex. 5 at 1 (emphasis added).) The Chair also wrote,

> After due deliberation on all of the facts and circumstances presented, the Board has determined that it is not in the best interest of the Union and the membership for this grievance to proceed to arbitration. The reason for the Board's decision is that the Board felt that there was no likelihood of success in arbitration.

(*Id*.) The Court fails to understand how Exhibit 5 shows that Plaintiff was denied a hearing as he contends. Plaintiff additionally argues that Policy 154 does not apply to all employees. (Docket No. 75 at 4.) Although he included and referenced Exhibit 16-B, which is a copy of Policy 136, and pointed out that it applies to "All Staff (Individuals who are represented by a collective bargaining unit should refer to their agreement)," he also included in Exhibit 1E Policy 154, which, in contrast, states it applies to "All Staff" without reference to the CAB. Finally, Plaintiff argues that the University has failed to corroborate the reports of his misconduct and relied solely on hearsay. Again, Plaintiff is misconstruing this Court's obligation, which is to review the elements of a hybrid 301/duty of fair representation claim, not adjudicate the underlying misconduct charges that formed the basis for the University's and the Union's decisions. After considering Plaintiff's post-argument written submission, the Court remains convinced that no material issue of fact precludes summary judgment, and that Defendants have shown their entitlement to summary judgment.

Although not raised in his complaint, Plaintiff suggests in his motion papers that the Union's, and/or the University's decisions were based on racial discrimination. In her letter to Plaintiff, Fay Norton ("Norton"), Manager of Labor Relations for the University, referencing the third step grievance meeting held on October 22, 2007, reviewed the evidence presented about the three incidents between Plaintiff and Emergency Department Patients. Norton wrote, "[y]ou went on to say that you felt both nurse managers were 'immature' for having addressed these issues with you and that they had not investigated the incidents. You further stated that you felt that there was racial bias in their decision." (Pl.'s Mem. of Law Ex. 1A at 2.) Plaintiff's papers also contain a copy of 42 U.S.C. § 1981,

the Federal law prohibiting, *inter alia*, racial discrimination in the making of contract. (Pl.'s Mem. of Law Ex. 43 at 1.) Further, Plaintiff's interrogatories included questions about how many African American and how many white employees had been terminated by the University in the past year. (Pl.'s Mem. of Law Ex. 2-B at 4.) Additionally, at his deposition, Plaintiff testified as follows:

> Q. You're not alleging that the union failed to take your case to arbitration because of your race?
>
> A. Q. I'm not alleging that, no. I'm alleging that I was terminated because I was black and I feel the union has knowledge, I feel the union has knowledge that I was terminated because I was black. I feel that.
>
> Q. But that the union simply didn't take your case to arbitration and you thought they should have?
>
> A. That and I feel a lot of things about the union, Mr. Harren. I feel the union knew that I was terminated because I was black, okay, and I feel—.

(Jones Dep. at 61.) Notwithstanding the allegations he made at his deposition, Plaintiff chose not to amend his complaint to add any claims of racial discrimination, despite being invited to do so by opposing counsel. (*See* Letter from Michael T. Harren, Esq., to Rufus Jones (Apr. 14, 2009) (Docket No. 58-4) at 1 ("In order to pursue a claim under [42 U.S.C. § 1981], you would have been required to set forth such a claim in your complaint."); Union Mem. of Law at 10 ("Approximately one week after the letter, Jones telephoned 1199 SEIU's counsel and stated that he would not seek to amend the complaint.") The complaint contains no racial discrimination allegations, and the Court does not construe Plaintiff's motion for summary judgment as one to amend the complaint. The Court concludes that Defendants have shown that neither the University nor the Union has breached the CAB.

## CONCLUSION

For the reasons stated above, the Court grants the Union's and the University's cross-motions (Docket Nos. 58 & 64) and denies Plaintiff's motion (Docket No. 57). The Clerk is directed to enter judgment for Defendants and close the case.

IT IS SO ORDERED.

Dated: December 22, 2009
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge